| | |
|---|---|
| Shondria Webber, <br><br> Plaintiff, <br><br> v. <br><br> Aeroflow, Inc., <br><br> Defendant. | **COMPLAINT AND JURY DEMAND** |

Plaintiff Shondria Webber, through her counsel, the law firm of Williams & Ray, PLLC, for her Complaint against Aeroflow, Inc. alleges the following:

## I. NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") to correct unlawful employment practices based on race (African American) and to provide appropriate relief to Shondria Webber ("Plaintiff" or "Mrs. Webber"), who was adversely affected by the unlawful employment practices. Specifically, Plaintiff alleges that Aeroflow, Inc. ("Defendant" or "Aeroflow") demoted her based on her race (African American).

## II. JURISDICTION AND VENUE

1. The court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as Plaintiff Webber is alleging violations of his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e).

**1**/9

2. Venue is proper, pursuant to 28 U.S.C. § 1391, as the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of North Carolina.

3. Plaintiff Webber has complied with all administrative, jurisdictional, and legal prerequisites for the filing of this action. Specifically, Mrs. Webber filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging, *inter alia*, discrimination based on her race. The EEOC issued Mrs. Webber with a notice granting her the right to sue Aeroflow on June 23, 2021.

### III. PARTIES

4. Plaintiff Webber is an African American female who is a citizen and resident of Buncombe County, North Carolina.

5. At all relevant times, Defendant Aeroflow was an employer engaging in an industry affecting commerce; employs more than fifteen employees; and has continuously been doing business in the Asheville, North Carolina. Defendant's Principal and Registered office is located at 3165 Sweeten Creek Road, Asheville, NC 28803. Defendant can be served by serving process on Casey Hite, Aeroflow President and Chief Executive Officer, at the registered office or at 438 Flat Top Mountain Road, Fairview, North Carolina 28730.

### IV. FACTUAL BACKGROUND

6. Aeroflow is a healthcare company that provides durable medical equipment. More specifically, Aeroflow provides breast pumps, maternity compression, incontinence supplies, urological supplies, diagnostic sleep testing, CPAP equipment and supplies, nebulizers, and mobility equipment to physicians and patients nationwide.

7. Mrs. Webber possesses a Bachelor's degree in Business Administration and a Master's degree in Clinical Mental Health Counseling. She also has approximately 15 years of management experience throughout various industries.

8. Mrs. Webber was hired and started working for Aeroflow on July 10, 2017. She was hired as an intake representative in the Durable Medical Equipment department ("DME").

9. Mrs. Webber was paid on an hourly basis and qualified for both monthly and annual bonuses. The monthly bonuses were based on production and could reach $250 per month. The annual bonus amounted to between $1,000 and $2,000 for non-managerial employees.

10. At the time Mrs. Webber was hired, DME was overseen by Patricia Hutchins and it consisted of various divisions.

11. Shortly after Mrs. Webber was hired, Ms. Hutchins was replaced by Carlene Sifford who broke the various DME divisions into four separate, discrete departments known as individual profit centers: Respiratory, DME – Bent Metals, Pulmonary, and Pediatrics, with each profit center being assigned its own individual director.

12. To that end, at the time of the separation, Michelle Worley was assigned to be the director of Pulmonary.

13. At the time of the separation, the Pulmonary department was not profitable and in need of significant work to be turned around.

14. Aeroflow lacks diversity among its managerial and executive team. At the time of the separation, Brianna Denton-Allen became the Team Lead in Respiratory and was the only African American to hold any managerial or executive position throughout the entire company.

15. On October 17, 2018, Mrs. Webber was promoted to Team Captain within Pulmonary.

16. On November 19, 2018, Mrs. Webber was promoted again to the Team Lead within Pulmonary. At that time, Mrs. Webber became only the second African American to hold any managerial or executive position withing the company; Ms. Denton-Allen being the other.

17. Team Lead was a management level position and Mrs. Webber's job responsibilities included *inter alia*: training and development of team members; ensuring monthly goals were met; conducting employee evaluations; effectuating disciplinary actions of team members; handling customer complaints; managing commercial accounts; building relationships with referral sources; ensuring phone coverage; overseeing timeliness of orders; generating month-end reports; ensuring personnel coverage at remote offices; conducting monthly check-ins with team members; creating training material for the department; working with outside sales representatives to assist in building their territory; and ensuring all the company policies and procedures were followed; assisting in hiring new employees; and traveling to remote offices.

18. Between the two promotions, Mrs. Webber received significant raises. After the raises, Mrs. Webber earned approximately $40,000 per year in hourly pay. In addition to the raises, because her new position was a managerial position, Mrs. Webber qualified for a more significant monthly and annual bonuses. To that end, the monthly bonuses typically ranged between $250 and $1,000 per month. The annual bonus for managerial employees was approximately $10,000.

19. As a result of the increased bonuses, Mrs. Webber's total annual compensation as a managerial employee was approximately $65,000 per year.

20. By early 2019, thanks in no small part to Mrs. Webber's hard work, the Pulmonary department was turned around and became profitable.

21. Recognition and acknowledgment of this accomplishment was given to Mrs. Webber in multiple emails from company executives.

22. Additionally, the success of the Pulmonary department was noted by Casey Hite, Aeroflow CEO, and Scott Sonnone, Aeroflow CFO, in various all staff meetings. Upon information and belief, these staff meetings were recorded.

23. Moreover, Mr. Sonnone took the entire Pulmonary department out for dinner in 2019 to recognize and thank them for their contributions.

24. Mrs. Webber's annual performance evaluations also demonstrate her strong performance and success. Specifically, Mrs. Webber's performance evaluations uniformly rate her as meeting or exceeding expectations. In fact, on her 2020 evaluation, Mrs. Webber is described as the "epitome of being a team player" and "a source of encouragement to the entire division" who "works to make sure all the employees are getting the help they need and are treated fairly."

25. In addition, in early 2020, in recognition of her solid performance, Mrs. Webber was rewarded with an additional $1.00 per hour raise.

26. In early 2020, Ms. Worley was moved to a different division of the company and the Operations Manager position was open. However, rather than opening the position for applications, Aeroflow gave the position to James Richter, and external hire, who began in that role on March 2, 2020.

27. On August 3, 2020, Mr. Richter reassigned three non-managerial employees whose primary responsibilities were related to processing orders. At that time, Mr. Richter instructed Mrs. Webber to assist with processing orders given the decrease in staff. However, Mrs. Webber was expected to, and did in fact continue fulfilling all of her other job responsibilities.

28. On November 17, 2020, because of the increasingly large workload, Mr. Richter removed the responsibility of payroll and time related issues from Mrs. Webber's plate. Payroll and time related issues represented an incredibly small percentage of Mrs. Webber's managerial duties.

29. On December 23, 2020, Mrs. Webber was given notice of her annual bonus. However, despite her strong performance and despite engaging in all her managerial duties (other than the recently removed payroll and time related issues) and contributing to processing orders, Aeroflow paid her the non-managerial bonus amount.

30. Mrs. Webber immediately contacted Mr. Richter about the reduced pay. Mr. Richter responded that the pay was correct because Mrs. Webber was no longer a manager. Moreover, Mr. Richter stated that he would be scheduling a meeting to discuss Mrs. Webber's position.

31. Of course, Mrs. Webber had been conducting managerial work, she recently received a glowing performance evaluation, and no such demotion was discussed or mentioned by anyone at any time prior to Mr. Richter's statement.

32. Aeroflow corrected the payment and no such meeting regarding Mrs. Webber's position followed.

33. On February 18, 2021, Mrs. Webber sent an email to Marshall Stanton, Aeroflow's Human Resources Director, and Stacey Gasperson, a Human Resources Associate. In the email Mrs. Webber complained of the surreptitious demotion and lack of any rationale for the same, she complained the lack of managerial diversity at Aeroflow, the lack of opportunities at Aeroflow for individuals of color, and about her inability to speak up for fear of being negatively viewed as an aggressive black woman. Mrs. Webber requested a meeting to discuss those issues.

34. On March 2, 2021, Mrs. Webber met with Mr. Stanton and Lauren Bennett, Aeroflow's Director of Sales Operations. However, rather than discuss the issues she brought up in the email or any investigation that was conducted into her complaints, Mr. Stanton stated that Mrs. Webber was in fact demoted and was no longer a manager.

35. In support of the demotion, Mr. Stanton falsely stated that Mrs. Webber, along with Ms. Sifford, Mr. Denton-Allen, Josh Lucas, Vaughn Williams, and Ms. Worley "ran the [Pulmonology] department into the ground."

36. This reason was patently untrue and as a result clearly pretextual for multiple reasons.

37. First, the individuals listed were not associated with the Pulmonology department and did not work with Mrs. Webber. Specifically, Ms. Sifford was in charge of Respiratory and Mrs. Webber had not worked for her since before she was a manager; Ms. Denton-Allen was exclusively part of the Respiratory department; Josh Lucas was Director of Marketing who exclusively worked for that department; Vaughn Williams was part of various departments and retired in early 2020; and Ms. Worley was the Director over the Clinical division, completely separate from the four DME departments.

38. Moreover, of the individuals listed, only Mrs. Webber and Ms. Denton-Allen, the two African Americans, were demoted while all others maintained their high-level positions.

39. Second, the Pulmonology department was not "run into the ground." Quite the opposite in fact. Since early 2019, Pulmonology was profitable, and its success was repeatedly recognized.

40. Third, Mrs. Webber's performance was never called into question in her entire tenure. She received consistent raises exemplary evaluations.

41. Moreover, between November 2018 and March 2021, Mrs. Webber reached her productivity goals and thus received a monthly bonus approximately 85% of the time.

42. As a result of the wrongful demotion, Mrs. Webber's total compensation reduced more than $15,000 per year. This significant reduction in pay resulted in her constructive discharge on July 26, 2021.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Race Discrimination in Violation of Title VII

43. Plaintiff incorporates the foregoing paragraphs by reference herein.

44. As an African American, Mrs. Webber is a member of a protected class.

45. During her employment, Mrs. Webber was subjected to race discrimination including being subjected to a demotion resulting in a significant reduction in pay and subsequently being constructively terminated.

46. Mrs. Webber was treated less favorably than her Caucasian counterparts.

47. The adverse action taken against Mrs. Webber was motivated by her race.

48. Defendant's actions as described herein were willful and wanton and done with reckless disregard for Mrs. Webber's protected rights.

49. As a result of Defendant's discriminatory conduct, Mrs. Webber has suffered damages.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter a judgment in her favor and against the Defendant(s) and award the following:

(a) Injunctive, declaratory, and prospective relief as allowed by law;

(b) Damages in such an amount as shall be proven at trial for back-pay and damages including lost benefits, wages, promotions, tenure, seniority, and other employment opportunities.

(c) An order to reinstate Plaintiff, or in the alternative, front pay and benefits in an appropriate amount;

(d) Compensatory damages, including emotional distress as allowed by law

(e) Punitive damages;

(f) Attorney's fees and costs as provided for by law;

(g) Pre- and post-judgment interest as provided for by law; and

(h) Such other relief as the Court deems just on proper.

**Williams & Ray, PLLC:**

s/ Brycen G. Williams

Brycen G. Williams
State Bar No. 50253
  Williams & Ray, PLLC
  555 Fayetteville St., Suite 201
  Raleigh, NC 27601
  Phone:  (888) 315-3841
  Fax:  (303) 502.5821
  Email:  bw@williamsray.com
  *Attorneys for Plaintiff*

Plaintiff's Address
Shondria Webber
48 Dogwood Ct.
Asheville, NC 28805